**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORTICAS LAMOSEL, LDA, | No. C 05-4155 SI |
| Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| DIAGEO CHATEAU & ESTATE WINES, | |
| Defendant. | |

On November 3, 2006, the Court heard oral argument on defendant's motion for summary judgment. Having considered the arguments of counsel and the papers submitted, the Court hereby GRANTS defendant's motion.

**BACKGROUND**

Plaintiff Corticas Lamosel ("Corticas") is a Portuguese company that manufactures corks. Complaint ¶ 1. Defendant Diageo North America Inc., d/b/a Diageo Chateau & Estate Wines ("Diageo") is a company engaged in the business of manufacturing and distributing premium beverages. Helms Decl. ¶ 1. European Cork, Inc., ("ECI") is an independent cork distributor and not a party to this litigation. *Id.* ¶ 4. It is undisputed that Corticas and Diageo each had a business relationship with ECI; Corticas manufactured corks and sold them to ECI, among others, and ECI sold corks to Diageo, among others. It appears that at least some corks manufactured by Corticas were ultimately sold to Diageo. At issue in this lawsuit is whether Corticas and Diageo contracted directly regarding the purchase of corks in 2004. Corticas alleges that Diageo, either through an agent or by its conduct, established a direct contract with Corticas and failed to pay two invoices totaling approximately $186,450.000.

Corticas relies on the deposition testimony of Antonio Lopes Gomes, a Corticas employee,[1] in an effort to establish the fact that Corticas and Diageo had a contract. Gomes testified that Corticas and ECI first did business in 2003 when ECI contacted Corticas and inquired whether Corticas was available to sell corks. Gomes Dep. 18-19. The only person at ECI with whom Corticas dealt was Nuño Soares, the owner of ECI. *Id.*[2]

Gomes testified that he first became aware that Diageo wanted to purchase corks through Soares:

Q. How did you first become aware – how did Corticas first become aware that Diageo wanted to purchase corks?

A. Through the person who put the order to us.

Q. And who was that?

A. Mr. Nuño Soares.

Q. At that time, what was your understanding of who Mr. Soares worked for?

A. In this case, Mr. Soares was the person responsible for buying the corks for Diageo.

. . .

Q. At the time of this first transaction in April of 2004, was it your understanding that Mr. Soares worked for ECI?

A. Yes.

*Id.* at 15, 17. Gomes testified that he believed there were approximately five to ten transactions for which Corticas sent invoices directly to ECI for corks that "ended up with" Diageo. *Id.* at 23. ECI paid Corticas directly for those orders. *Id.* at 23. Gomes also testified that all of the cork orders came through Soares; it is undisputed that Diageo never sent a purchase order to Corticas. *Id.* at 9-10, 12, 43.

Beginning in 2003 or 2004, Corticas experienced problems with ECI not paying for orders. *Id.* 18-19, 26. Because of these problems, and as directed by Soares, Corticas sent Diageo four invoices directly. *Id.* at 24-25, 50. The instant lawsuit seeks payment for two of these invoices, one dated July

---

[1] It is unclear what Gomes' title is, and whether he is a current or former employee. Based on his deposition testimony, Gomes appears to be the Corticas employee who communicated with Soares.

[2] It does not appear that either party has taken the deposition of Soares. Defendant's papers state in a footnote that on the eve of the discovery cut-off, plaintiff noticed Soares' deposition to take place after the close of discovery, and plaintiff's counsel stated that he would seek leave of the Court to take Soares' deposition. Plaintiff has not sought such leave.

1, 2004 and one dated July 22, 2004; ECI ultimately paid Corticas for the other two invoices sent directly to Diageo. *Id.* at 25-26, 41, 51-52.[3]

The July 1, 2004 invoice relates to 1,650,000 corks shipped by sea. *Id.* at 42, Ex. 6. The invoice lists the delivery address as "Diageo Chateau & Estate Wines, 8th Street East, Sonoma, California, 95476." *Id.*[4] Gomes testified that Soares gave Corticas the order and instructions regarding where to send the shipment. *Id.* at 43. Gomes testified that Corticas never received any response from Diageo to either the invoice or to the cover letter Corticas sent with the invoice. *Id.* at 45. According to Gomes, "at this time we were no — no longer working with ECI and we were instructed by Mr. Nuño Soares to have all our business dealings directly with Diageo." *Id.* After Soares provided this information to Corticas, Gomes did not confirm this information with Diageo or otherwise relay this information to Diageo because "he [Soares] was the contact person, you now, among Diageo and Lamosel." *Id.* at 46.

The July 22, 2004 invoice relates to another 1,650,000 corks shipped by sea. *Id.* at 54, Ex. 9.

---

[3] Although plaintiff repeatedly asserts in its papers that Diageo paid the other two invoices, in fact Gomes testified that ECI paid those invoices. *See id.* It is unclear from the record how exactly ECI came to pay those invoices, which were dated April 21, 2004 and July 7, 2004. *Id.* Ex. 2 & 8. Gomes testified that aside from sending Diageo the April 2004 invoice, no one at Corticas had any communication with Diageo about that invoice. *Id.* at 25. In the deposition excerpts submitted by the parties, Gomes was not questioned about whether there were communications between Corticas and Diageo regarding the July 7, 2004 invoice.

[4] This invoice (and others) lists the mailing address for Diageo as "240 Gateway Road West, Napa, California 94558." *Id.* The complaint also alleges that Diageo has its principal place of business at the Napa address. Complaint ¶ 2. At the hearing, defendant's counsel stated that Diageo received the documents sent by Corticas to the Napa address.

The Court notes that at the hearing, plaintiff's counsel stated that Diageo also maintains an address at 21468 8th St., Sonoma, and that ECI has an address at 21841 8th St., Sonoma. Plaintiff's counsel asserted that the documents submitted by plaintiff show that Corticas shipped corks directly to Diageo at the 21468 8th St., Sonoma address, and cited CORT 43 as evidence. However, that document, which appears to be an air waybill, simply states that delivery is to "Diageo Chateau & Estate Wines at 8th Street East, Sonoma, CA": no street address is listed. Gomes Dep. Ex. 2 at CORT 43. However, that same document also states "First Nfy. European Cork Industries Inc. 21481 8th Street East, Suite 5, Sonoma Ca." *Id.*

The Court was unable to find any document in the record showing that corks were shipped to 21468 8th St., Sonoma. Instead, the documents either simply list an 8th St. address with no street address, *see, e.g.,* CORT 23, CORT 26, CORT 38, DIAG 384, and/or the documents show that the corks were shipped to 21841 8th St., Sonoma: the address associated with ECI. *See, e.g.*, CORT 41, CORT 70-71, CORT 74, CORT 83, and DIAG 20 (DIAG 20 is a delivery receipt signed on September 16, 2004; the "Consignee Destination" lists Diageo North America, Inc. at 21468 8th St., East, Sonoma, CA." However, it appears someone crossed out that address and wrote, "21841 8th St. East" in its place.).

3

Corticas never spoke with anyone at ECI about the fourth invoice and the fact that Corticas had not been paid. *Id.* at 57.

Gomes testified that at some point in 2004 he contacted Diageo directly regarding the July 1 and July 22 invoices. *Id.* at 12-13. Gomes states that he called Diageo and spoke with Clorita Butterfield, who told Gomes that the person responsible for paying invoices was on vacation and that she would forward Gomes' message to the appropriate individual. *Id.* No one ever returned Gomes' phone call, Gomes never spoke again with anyone at Diageo, and Gomes is not aware of any else at Corticas who ever spoke directly with anyone at Diageo. *Id.* at 13-14.

Diageo has submitted the declaration of Karen Helms, a current Diageo employee who worked as the Materials Manager for Diageo's Sonoma Bottling Plant from about March 2004 to February 2005. Helms Decl. ¶ 2. Helms states that while working in that position, she was responsible for the procurement of corks, which are utilized in Diageo's bottling process. *Id.* According to Helms, Diageo purchases corks from a number of independent cork distributors, and Diageo is not generally aware and does not control the ultimate source of the corks supplied by the independent cork distributors. *Id.* ¶ 3.

Helms states that from May 1995 through September 2004, Diageo purchased corks from ECI. *Id.* ¶ 4. On June 3, 2004, Diageo issued two purchase orders to ECI for the purchase of 3.9 million corks. *Id.* The first purchase order was for 2.4 million pre-branded corks for delivery on July 10, 2004. *Id.*, Ex. A. The second purchase order was for 1.5 million corks for delivery on July 6, 2004. *Id.*

Helms states that pursuant to these purchase orders, ECI delivered roughly 3.5 million corks to Diageo. *Id.* ¶ 6. According to Helms, the majority of ECI's deliveries failed to meet the deadlines. *Id.* Helms provides the following summary of the various dates on which Diageo received the corks from ECI: (1) on July 19, 2004, Diageo received 500,000 corks from ECI; (2) on August 3, 2004, Diageo received 310,000 corks from ECI; (3) on August 13, 2004, Diageo received 300,000 corks from ECI; (4) on August 23, 2004, Diageo received and rejected, due to quality concerns, 200,000 corks from ECI; (5) on August 24, 2004, Diageo received and rejected, due to quality concerns, 100,000 corks from ECI; (6) on August 26, 2004, Diageo received 1,650,000 corks from ECI; (7) on September 21, 2004, Diageo received 440,000 corks from ECI. *Id.* In addition, according to Helms, on August 23, 2004, Diageo inspected roughly 4,000 corks at ECI's warehouse. *Id.* ¶ 7. Due to quality concerns, Diageo advised

4

ECI that it would not accept delivery of those corks. *Id.*

Helms states that Diageo has paid ECI $166,675.00, which represents full and complete payment for the roughly 3.2 million corks that Diageo received and accepted from ECI between July 2004 and September 2004. *Id.* ¶ 8, Ex. B. Diageo did not pay for the corks it rejected. *Id.* ¶ 8. Helms also states that Diageo has never purchased corks directly from Corticas:

> In particular, prior to this litigation, Diageo had never: (1) issued a purchase order or otherwise agreed in writing to purchase corks directly from Corticas; (2) engaged in oral communications regarding the transactions at issue in the present litigation; (3) received and accepted delivery of any corks directly from Corticas; or (4) made any payment to Corticas for the purchase of corks.

*Id.* ¶ 9.

## LEGAL STANDARD

Summary adjudication is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In a motion for summary judgment, "[if] the moving party for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact, the burden of production then shifts so that the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." *See T.W. Elec. Service, Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the non-moving party. *See T.W. Electric*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991). The evidence presented by the parties must be admissible. *See* Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

**DISCUSSION**

Plaintiff has alleged claims for breach of contract, account stated, quantum meruit, and indebitatus assumpsit.[5] Defendant contends that it is entitled to summary judgment on all of plaintiff's claims because Corticas has failed to submit any admissible evidence showing that Corticas and Diageo entered into a contract or otherwise had any direct business relationship. Plaintiff concedes that the Court should grant summary judgment on the claim for account stated, but argues that summary judgment should be denied on the other claims because there are triable issues of fact as to whether Soares, acting as Diageo's agent, established a contract between the parties, or alternatively, whether a contract was formed by the parties' conduct.[6]

The Court agrees with defendant that there are no triable issues of fact on any of plaintiff's claims. As a threshold evidentiary matter, to the extent Corticas relies on Gomes' deposition testimony about conversations between Gomes and Soares, those communications are hearsay. Plaintiff contends that any statements made by Soares to Gomes are admissible as an admission of a party-opponent because Soares was an agent of Diageo. Plaintiff's argument is circular because it improperly relies on the very hearsay at issue in an effort to show that Soares was an agent; plaintiff has not shown by any admissible evidence that Soares was an agent of Diageo. *See Howell v. Courtesy Chevrolet, Inc.*, 16 Cal. App. 3d 391, 401 (1971) ("The declarations of an agent are not admissible to prove the fact of his agency or the extent of his power as such agent.").

Even if the Court considered the proffered testimony, however, that testimony does not establish that Soares was defendant's agent. At most, Gomes' testimony shows that Gomes knew Soares worked

---

[5] The breach of contract and account stated claims are alleged against "defendants," while the remaining two claims are alleged against Diageo Chateau & Estate Wines. However, the complaint only names one defendant, Diageo Chateau & Estate Wines.

[6] At the hearing, plaintiff's counsel also contended that summary judgment should be denied because defendant admitted paragraph 13 of the complaint. Paragraph 13 of the complaint alleges, "DIAGEO have failed and refused, and continue to fail and refuse, to pay CORTICAS the sum of one-hundred-eighty-six-thousand-four-hundred and fifty dollars ($186,450.00), and said amount, together with interest thereon at the legal rate, is presently due from DIAGEO to CORTICAS." Complaint ¶ 13. Defendant's admission of this paragraph does not raise a genuine issue of disputed fact; defendant has simply admitted that it refused to pay the amount demanded by plaintiff. Moreover, the Court notes that paragraph 13 of the complaint relates to plaintiff's claim for account stated, and plaintiff has conceded that the Court should grant summary judgment on this claim. *See* Opposition at 12:23-26.

for ECI during the relevant time period; that Gomes "understood" Soares was "the person responsible for buying the corks for Diageo"; and that Gomes only dealt with Soares and, prior to Gomes' conversation with Butterfield about the July 2004 invoices, no one at Corticas ever had any direct communication with Diageo. Plaintiff has not provided any evidence that Soares represented to Corticas that he was defendant's agent; being "the person responsible for buying the corks for Diageo" is entirely consistent with ECI's role as an independent cork distributor.

More importantly, even if Soares made such representations, plaintiff has not submitted any evidence suggesting that Diageo was aware of such representations. In order to raise a triable issue of fact as to whether Soares was defendant's agent, plaintiff must submit at least some evidence that "the principal . . . intentionally communicate[d] this relationship to the third party, or negligently cause[d] the third person to believe that there is an agency relationship." *Howell*, 16 Cal. App. 3d at 401. Here, aside from Corticas sending Diageo four invoices – two of which were paid by ECI – is nothing in the record showing that Diageo was even aware of Corticas.

Similarly, the Court finds unpersuasive plaintiff's contention that the parties' conduct created a contract. Plaintiff argues that a contract was formed based on the facts that Corticas stamped the corks with "Blossom Hill," shipped the corks "directly" to Diageo, Diageo "accepted" the goods, Diageo paid two of the four invoices, and Diageo did not object or reject the goods or to the fact that Corticas sent the invoices to Diageo.

The Court finds these arguments lack merit, and in some instances are directly contradicted by the evidence in the record. First, as noted in footnote 4 *supra*, the documents attached to Gomes' deposition do not establish that the corks were shipped directly to Diageo (or that Diageo "accepted" the corks); instead, the documents suggest that the corks were shipped to ECI. Second, Gomes stated in his deposition that ECI, not Diageo, paid two of the four invoices. Plaintiff's assertion that Diageo paid Corticas "through ECI" is unsupported by any evidence. The fact that Corticas sent Diageo four invoices and other documents, and Diageo did not object to those invoices (and also did not pay the invoices) is of no legal consequence whatsoever. It is undisputed that, aside from mailing the invoices to Diageo and Gomes' single call to Diageo to inquire about payment of the invoices, Corticas and Diageo never had any communications regarding the cork orders. Instead, as plaintiff admits, Corticas

7

dealt solely with Soares of ECI. Simply put, plaintiff has not submitted any evidence showing that Diageo was even aware, prior to the mailing of the invoices, that Corticas existed, much less that Diageo acted with an intent to create a contract with Corticas. *See Cal. Physicians Emer. Med. Gp. v. Pacifcare of California*, 111 Cal. App. 4th 1127, 1134-35 (2003); *cf. Varni Bros. Corp. v. Wine World, Inc.*, 35 Cal. App. 4th 880, 889 (1995) (holding triable issue of fact as to existence of implied in fact contract based on appellant's distribution of wine for wine producer over many years).

Accordingly, because plaintiff has not raised a triable issue of fact as to whether there was a contract or any type of agreement between the parties, the Court concludes defendant is entitled to summary judgment on plaintiff's claims. *See* Cal. Com. Code § 2204 ("A contract for sale of goods may be made in any manner sufficient to show agreement. . . . ."); *H. Russell Taylor's Fire Prev. Serv. Inc. v. Coca Cola Bottling Corp.*, 99 Cal. App. 3d 711, 720 (1979) (gravamen of claim of indebitatus assumpsit is contractual); *Haggerty v. Warner*, 115 Cal. App. 2d 468, 475 (1953) (cause of action for quantum meruit arises only when plaintiff performed services at defendant's request); *Block v. D.W. Nicholson Corp.*, 77 Cal. App. 2d 739, 747 (1947) (cause of action for account stated is based upon balance of accounts which has been agreed and accepted by parties).

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendant's motion for summary judgment, and SUSTAINS defendant's evidentiary objections to the hearsay contained in Gomes' deposition testimony. (Docket Nos. 29 and 44).

**IT IS SO ORDERED.**

Dated: November 3, 2006

SUSAN ILLSTON
United States District Judge

8